RUDOLPH GROSS, RESPONDENT, v. COMMERCIAL CAS-
UALTY INSURANCE COMPANY OF NEWARK, NEW JER-
SEY, APPELLANT.

Argued March 19, 1917—Decided June 18, 1917.

An insurance company, by its policy, contracted to pay the assured a weekly indemnity so long as he should be totally disabled and wholly and continuously prevented from performing any and every kind of business relating to his occupation. The business of the assured was that of a traveling salesman, which required a constant use of his feet, and during the term of the policy he was afflicted with a foot ailment which entirely prevented him from traveling and soliciting business, although during part of the term for which he claimed indemnity he was able to go to the office of his employer and conduct some business by writing letters and the use of the telephone. The trial court instructed the jury that the reasonable construction to be put upon the language used was, not that he must be so disabled as to prevent him from doing anything whatsoever pertaining to his occupation, but that if he be so disabled as to prevent him from doing any and every kind of business pertaining to his occupation, he was entitled to recover. *Held,* that such an instruction was not error.

On appeal from the Essex County Circuit Court.

For the appellant, *William M. Holmwood* and *Edward L. Katzenbach.*

For the respondent, *Jacob L. Newman.*

The opinion of the court was delivered by

BERGEN, J. The plaintiff brought his action to recover on a policy issued to him by the appellant, assuring him certain payments in case of death or disability resulting from bodily injuries effected solely through accidental means, and it provided that if by reason of disease or illness, contracted during the term of this insurance by the assured, he be totally disabled, and "wholly and continuously prevented from performing any and every kind of business pertaining to his occupation and necessarily confined in the house," he should be paid as for total disability, "and if, immediately following such a period of total disability and confinement in the house, he shall be totally disabled and wholly and continuously prevented from performing any and every kind of business pertaining to his occupation, but is not necessarily confined in the house, three-fourths of said amount per week shall be paid to the assured."

The plaintiff recovered a judgment from which the defendant has appealed.

This appeal presents two questions—*first,* is the plaintiff entitled to recover, and *second,* if entitled to recover, was the jury improperly instructed as to the extent of disability required by the policy?

The first was raised by motions to nonsuit and for a direction in favor of the defendant, and the second by an objection noted to the instructions given to the jury. The solution of the first question favorably to the appellant depends upon a determination that the policy was invalidated because of a breach by the plaintiff of certain written warranties made by him, and made a part of the policy which was issued on October 11th, 1911, and contained among other warranties the

following: "I have not been disabled nor have I received any medical or surgical attention during the past five years except as follows: In 1911 for *exzema,* lasting four months," and "My habits of life are correct and temperate; my hearing and vision are not impaired; I am in sound condition mentally and physically; except as herein stated: No exceptions." This policy expired October 1st, 1912, and was renewed each year thereafter, the last being from October 1st, 1914, to October 1st, 1915. The renewals were manifested by a certificate continuing in force the original policy. "Provided the statement in the schedule of warranties in the original contracts are true on this date and that nothing exists on the date hereof to render the hazard of the risk greater than or different than that shown by such schedule."

The testimony permits an inference that previous to the issuing of the last certificate the plaintiff had called upon a physician because, as plaintiff testified, he "got so easily tired in my feet, I went down there to consult, because he once treated me before, about a few years ago. * * * I went down there and he looked me over, he did not say anything. He said, 'You go home and take a little more care and take a little rest and rub your feet with alcohol.'

"Q. He did not tell you anything was the matter with you?
"A. No.
"Q. And you had no trouble after that until this last illness?
"A. Yes."

This he testified happened six months or a year prior to the last renewal. As this branch of the case rests upon the motions to nonsuit and for direction of a verdict, the foregoing testimony must be taken as true, and the question is whether this testimony conclusively established the fact that when the last renewal certificate was issued the plaintiff's warranty that he had "not been disabled nor have I received medical or surgical attention during the past five years," was untrue and therefore a breach of the warranty within the meaning of the policy, and also whether his condition made "the hazard of the risk different or greater than that shown by such schedule." The plaintiff's business required him to be on his feet most of

the time, and finding that he tired easily, he went to the physician and represented his condition, but was not informed by him that he had any illness; was simply told to bathe his feet in alcohol. We do not consider this receiving medical attention of such a character as to require the plaintiff to state it to the defendant on the renewal, or that not doing so would invalidate the policy. Neither the physician or the plaintiff had any idea that the symptoms might be an indication of the ailment which subsequently developed, or that it was a disease or sickness. Advising one to bathe his feet in alcohol simply because they are tired is not conclusive evidence that the plaintiff had received medical or surgical attention sufficient to forfeit the policy, because it had not been made known to the defendant any more than if the ailment was temporary, such as an ordinary cold. Whether the plaintiff had knowledge that his condition was such that the hazard of the risk was different or greater than that shown by the schedule of warranties was a jury question. The court submitted to the jury the question whether the ailment was of so serious a character as to permanently affect his health and to make him a less desirable risk, and directed them that if they found in the affirmative then there could be no recovery. It was not error for the court to refuse to nonsuit, or to direct for the defendant, for the reasons urged.

The second branch of the case depends upon the construction to be given to the following part of the policy: "If, immediately following such a period of total disability and confinement in the house he shall be totally disabled and wholly and continuously prevented from performing *any and every kind* of business pertaining to his occupation, but is not necessarily confined to the house, three-fourths of the said amount for the week will be paid to the assured."

The trial court instructed the jury that the reasonable construction to be put upon the language used was, not that he must be so disabled as to prevent him from doing anything whatsoever pertaining to his occupation, but that if he be so disabled as to prevent him from doing any and every kind

of business pertaining to his occupation, he was entitled to recover.

The proofs show that the occupation of the plaintiff was traveling for his employer from Newark, N. J., to New York, Boston, Philadelphia and other places, to sell and buy leather and hides and attend to the shipments; that he sometimes did office work, calling people on the telephone and dictating letters concerning business growing out of his traveling; that from January 4th, 1915, to the 15th of October following he was not able to do any traveling because of a severe and persistent ailment affecting his feet; they were so swollen that he could not wear his shoes until nearly the end of the period when he was able to wear a special shoe made for his use; he would go to the office with an automobile and while there occasionally dictated a letter, the proofs showing that during the entire period he dictated about eighty letters but that he did not do his regular work. We think that the instruction of the trial court was right. The indemnity contained in the policy included any and every kind of work appertaining to his occupation, not a part of his work, but any and every kind, and the policy makes the distinction between the total disability, which confined him to the house, and the disability to do every kind of work pertaining to his occupation after he was able to go out of the house, and provided a lower rate for the latter disability.

In *Young* v. *Travelers Insurance Co.,* 13 *Atl. Rep.* 896, the Supreme Court of Maine dealt with a policy which had in it this clause: "And wholly disable and prevent him from the prosecution of any and every kind of business pertaining to the occupation under which he is insured." In that case the trial court instructed the jury that the meaning of this language was not that he must be so disabled as to prevent him from doing anything whatsoever pertaining to his occupation or to any part of his business, but that he must be so disabled as to prevent him from doing any and every kind of business pertaining to his occupation, and that there was a difference between being able to perform any part; and any and every kind of business, and the appellate court sustained

this instruction to the jury. "If the prosecution of the business required him to do several acts and perform several kinds of labor, and he was able to do and perform only one, he was as effectually disabled from performing his business as if he could do nothing required to be done."

In *Hooper* v. *Accidental Death Insurance Co.*, 5 *Hurlst. & N.* 546, where the plaintiff was an attorney, he sprained his foot while riding on horseback, and the claim by the insurance company was that it did not wholly disable him. In that case the covenant was that if the injury be of "so serious a nature as to wholly disable him from following his usual business, occupation, or pursuits," the company would pay, and the court held, "If a man is so incapacitated from following his usual business, occupation or pursuits as to be unable to do so, he is 'wholly disabled' from following them. His 'usual business and occupation' embrace the whole scope and compass of his mode of getting his livelihood. * * * They intended that when the insured was wholly incapable of performing a very considerable part of his usual business, he should receive a compensation in respect of that disablement."

In construing a policy we should adopt the meaning of the words used most advantageous to the assured, and in the present case the indemnity runs during such period as the insured is disabled to perform any and every kind of his occupation. The proofs show sufficiently for the jury to so infer, that the principal part of the occupation of the insured was traveling, in which the use of his feet were absolutely necessary, and because of his peculiar illness he was disabled from performing the principal and major part of his occupation.

We see no error in this record, and think the judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, SWAYZE, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, TAYLOR, GARDNER, JJ. 11.

*For reversal*—None.