## GREAT NORTHERN CASUALTY COMPANY v. MCCOLLOUGH

[No. 14,026. Filed December 30, 1930. Rehearing denied March 25, 1931. Transfer denied April 27, 1933.]

*Harker & Irwin,* for appellant.

*Thomas M. Ryan,* for appellee.

McMAHAN, J. — Complaint by Lucille McCollough against Great Northern Casualty Company on an insurance policy to recover benefits alleged to be due plaintiff by reason of an injury resulting in a disability alleged to be within the terms of the policy. A trial by jury resulted in a verdict and judgment in favor of plaintiff for $400. The error assigned is the overruling of appel-

lant's motion for a new trial, the specifications of which are: (a) That the verdict is not sustained by sufficient evidence; (b) that it is contrary to law; (c) that the amount of the recovery is too large; and (d) that the court erred in giving and in refusing to give certain instructions.

The policy provides for the payment of a monthly accident indemnity of $100, "for the period of total loss of time commencing on date of accident, during which independently of all other causes such injury alone, wholly and continuously disables and prevents the insured from performing any and every duty pertaining to any business or occupation. . . . Provided, that indemnity under this part shall not be paid . . . in excess of the time the assured is, by reason of injury, under the professional care and attendance of legally qualified physician or surgeon."

Appellee was a deputy in the office of the clerk of the Clinton Circuit court and was so classified in the policy of insurance. The policy was issued March 29, 1928, at which time appellee was expecting to give birth to a child in July, 1928. Appellee was injured by reason of a fall at the home of her father-in-law at Crawfordsville, June 9, 1928, and on July 19, she was confined by reason of childbirth. Appellant concedes that appellee, by reason of her injury, was entitled to some benefits under the policy, but contends: (1) that she ceased her employment as deputy clerk April 15, and entered the classification of "housewife"; (2) that the accident, independently of all other causes caused total disability only from the date of the accident, June 9, until her confinement by reason of childbirth; (3) that appellee's change of employment reduced the monthly indemnity from $100 per month to $13.09 per month, under the classification of "housewife"; (4) that appellee was under the care and attendance of a physician only until August 5,

a period of 58 days; and (5) that such period of 58 days included disability caused jointly by the accident and confinement and that she was entitled to benefits for forty days at $100 per month and which would amount to $133.34, if she had not changed her employment, and that if she had changed her employment to that of "housewife", she was entitled to but $16.15. Appellee contends: (1) that she did not change her employment when she went to Crawfordsville; (2) that no deduction from this period should be made by reason of her confinement.

The only evidence relating to change of occupation is found in the testimony of appellee. She testified that when the policy was issued she was deputy clerk of the Clinton Circuit court under her father; that in the middle of April she went to live with her husband's parents at Crawfordsville, paying her board while there; that she took no employment in any capacity before her injury; that she went back to the clerk's office at Frankfort every week to help her father in the office, and was paid by him and so assisted him for three days in the week just before her injury; that she did nothing between those three days and the time when she was injured; her injury was caused by falling down stairs; before she went to Crawfordsville she agreed with her father that she would return to her work as soon as she was able; that she was subject to call by her father at any time; and that she did not expect to stop work but expected to go back to work as soon as she could after her confinement.

Before we can sustain appellant's claim that there had been a change in occupation, we would have to say the evidence shows as a matter of law that appellee had changed her occupation. This we cannot do. Whether there was a change in occupation was a question of fact for the jury. The jury found against appellant on that contention, and there is evidence to support that finding.

As heretofore indicated, indemnity for total disability under the terms of the policy was to be paid for the period "during which independently of all other causes such injury alone, wholly and continuously disables and prevents the insured from performing any and every duty pertaining to any business or occupation." Appellant contends that under this provision, appellee was not entitled to any indemnity for eighteen days when she was confined to her bed by reason of childbirth. The claim of appellant is that the disability during such period of eighteen days was caused by two concurrent proximate causes, and hence the disability during that period is not within the terms of the policy.

Appellee was accidently injured June 9, and as a result of such injury, she was totally disabled for a period of more than four months. The proximate and efficient cause of such disability was the injury which she received on June 9. The intervening childbirth was not a proximate or efficient cause of her disability during any part of such period. She would have been totally disabled during the whole of that period if she had not given birth to a child. The sole proximate and efficient cause of her disability was the accidental injury. The incident of childbirth had nothing to do with the cause of her disability and added nothing thereto. The eighteen days during which appellee was recovering from the effect of childbirth should not be deducted from the period during which appellee was totally disabled.

Appellant, referring to the provision which provides that the policy should not cover disability for any period during which the insured was not under the professional care and regular attendance of a physician, says that appellee ceased to be under the care and attendance of a physician August 5, and that she was not entitled to indemnity after that date.

Dr. Daugherty, a licensed physician, was called June 9, immediately after appellee's injury. He saw her every day thereafter until July 12. He testified that he placed splints on wrist and collar bone and bandaged her ankle. Splint remained on arm six weeks. When splint removed, wrist was so weak she could not do anything. That condition existed until September, when she went to her father's home in Frankfort, at which time she was wearing a brace on her arm and an elastic bandage. Up to that time she complained of pain. When she would go to pick up anything she was not sure of it. She did not know whether she would drop it or not. During that time she could not operate typewriter or take shorthand and could have done very little work in a home. Splint remained on collar bone four weeks. Ankle was bandaged two weeks, but remained swollen until September. She was under his constant care until she went to Frankfort in September. When she went to Frankfort, she could not have performed regularly and in the usual way the duties of any occupation. Did not see her after she went to Frankfort until in December when she returned to Crawfordsville. At that time wrist was still weak and soreness in back reduced efficiency. She was in bed as a result of the accident until June 23. She was confined to her bed by reason of childbirth three weeks. She could not lift anything before September when she went to Frankfort.

There is a slight conflict in the evidence as to when appellee left Crawfordsville and returned to Frankfort. Dr. Daugherty said it was in September. Appellee said she thought it was August 4. The undisputed evidence, however, is that appellee was confined by reason of childbirth July 19; that she was confined to her bed for three weeks, or until August 9, and that for a week thereafter, Dr. Daugherty saw her every other day and possibly a

couple times the next week, and it was after this when she went to Frankfort.

The jury trying the case was clearly justified in finding that appellee returned to Frankfort in the early part of September. And there is other evidence including the testimony of appellee that as a result of her injuries she was disabled from doing any appreciable amount of work of any kind until sometime in October, and which would sustain a finding that she was entitled to an indemnity benefit under the policy of $100 per month for a period of four months.

There are two provisions in the policy relating to the care and attendance of a physician. The first is that indemnity shall not be paid in excess of the time the insured is under the "care and attendance" of a legally qualified physician. This provision is found in what is designated as "Part 4" of the policy. Following "Part 13" of the policy under the heading "Standard Provisions," are twenty provisions, and following these, and under the heading "Additional Provisions" we find six "additional provisions," the fourth one of these provides that the policy does not cover disability for any period during which the insured is not under the "professional care and regular attendance" of a licensed physician. Appellant insists that the use of the word "regular" in this last provision prevents a recovery of indemnity for the time that intervened after appellee returned to Frankfort because, as appellant contends, appellee was not, during that time, under the care and "regular"attendance of a physician.

The primary meaning of medical attendance is the rendering of professional medical services. Bouv. Law Dict., Title Medicine. And it has been held that the words "medical attendance" are not necessarily restricted in their meaning to the professional attendance of a physician, but may include nurs-

ing and watching. *Scott* v. *Winneshick County* (1879), 52 Iowa 579, 3 N. W. 626.

In this connection, appellant calls attention to the fact that appellee did not see or communicate with any physician about her injuries after she went to Frankfort, and says that the fact that her physician, before she went to Frankfort, gave her instructions as to how she should move and exercise her wrist and that the fact that during the time she was at Frankfort she followed such instructions are not sufficient to bring her within the provision that she must be under the care and regular attendance of a physician, and that the words "regular attendance" means more than following a physician's instruction.

There was a period of about four weeks while appellee was in Frankfort, that she did not see or communicate with a physician, but this does not necessarily mean that she was not, during that time, under the care and attendance of her physician. She had received instructions from her physician as to what she should do during this period in order that she might recover from her injuries and remove her then disability, and she followed such instructions. The jury had the right to find that while she was at Frankfort, she was under the care and regular attendance of a physician.

Complaint is made of instruction 2 given at the request of appellee. By this instruction, the attention of the jury was called to the clause which provides for payment of indemnity during the period when the injury "wholly and continuously disables and prevents the insured from performing any and every duty pertaining to any business or occupation." Referring to this provision, the court charged the jury as follows: "The meaning of the words 'wholly and continuously disables and prevents the insured from performing each and every duty pertaining to any business or occupation'

is not that plaintiff must have been disabled so as to prevent her from doing anything whatsoever pertaining to any duty of any business or occupation, but that she must be disabled to the extent that she could not do any and every duty pertaining to any business or occupation. She might be able to do a part and not be able to do all, and because she was not able to do all be deemed to be wholly disabled from doing any and every kind, provided, of course, that she was so disabled as to be prevented from doing substantially all the necessary and material things in any occupation requiring her own exertions in substantially her customary and usual manner of so doing. She might be able to do personally minor and trivial things, not requiring much time or physical labor, and through others, acting under her direction, to do heavier things requiring physicial exertion, which in the ordinary and proper performance of her duties in any occupation which she had or might theretofore have done personally and yet, because of inability to do heavier things and more material things personally, be said to be wholly disabled within the terms of her policy; provided further, that the things she was unable personally to do would constitute substantially all of the duties of the employment, if any, in which she was engaged at the time of her injury or any occupation into which she might have entered."

This instruction is, for all practicable purposes, a copy of an instruction which this court approved in *Commercial Travelers, etc., Assn.* v. *Springsteen* (1900), 23 Ind. App. 657, 55 N. E. 973, 975. The policy in the Springsteen Case provided that no claim should accrue upon the contract of insurance except when the injury should "immediately and wholly disable the insured from performing any and every kind of business pertaining to his occupation" as manager of a certain store. The policy in the instant case provides for the payment of a

monthly indemnity for the period of total loss of time during which the injury alone "wholly and continuously disables and prevents the insured from performing any and every duty pertaining to any business or occupation."

As was said by this court in the case just cited, p. 662, "The expressions of the courts as to what constitutes total disability are not in harmony." After a review of the authorities, the court adopted the liberal rule of construction which holds that where the language of a policy of insurance is capable of two constructions, the one most favorable to the insured would be adopted, and approved the instruction there involved.

As was said in *American Liability Co.* v. *Bowman* (1917), 65 Ind. App. 109, 120, 114 N. E. 992, 995: "The rule prevails in this and most jurisdictions that provisions in a policy for total disability, irrespective of the technical variations in the language employed, should be given a rational and practical construction; that the phrase 'total disability' is a relative term, depending in a measure upon the nature of the employment, the capabilities of the injured person, and likewise the circumstances and peculiar facts of each particular case. It is usually a question of fact to be determined by the court or jury trying the case and was such question in the case at bar."

May on Insurance (4th ed), §552, says that "wholly disabled" is equivalent to "quite disabled" and that though the insured "may do certain parts of his accustomed work, and engage in some of his usual employments, he may yet recover, so long as he cannot, to some extent, do all parts, and engage in all such employments."

In *Clarke* v. *Travelers Ins. Co.* (1920), 99 Vt. 383, 111 Atl. 449, 450, the insured was indemnified against loss if the injury "shall . . . wholly, and continuously disable and prevent the insured from performing any and

every kind of duty pertaining to his occupation." It was there held that "total disability" did not mean absolute physical inability to transact any kind of business pertaining to the insured's occupation, but disability from performing the substantial and material acts connected with such occupation.

In *Hohn* v. *Inter-State Cas. Co.* (1897), 115 Mich. 79, 72 N. W. 1105, 1106, the injuries insured against were such as should "immediately, continuously and wholly disable and prevent the insured from performing any and every kind of duty pertaining to his occupation." It was there held that the insured was not prevented from recovery as for a total disability because he went to his place of business for several days after the accident, when he was practically unable to perform any work because of his injuries, and after a few days was forced to remain at home several weeks.

In *Young* v. *Insurance Co.* (1888), 80 Me. 294, 13 Atl. 896, 897, the court, in construing a contract of insurance similar to the one involved in the instant case, said: "The object to be accomplished by this contract was indemnity to the plaintiff for loss of time from being wholly disabled from prosecuting his business by an injury received as specified in the policy. He was not able to prosecute his business unless he was able to do all the substantial acts necessary to be done in its prosecution. If the prosecution of the business required him to do several acts and perform several kinds of labor, and he was able to do and perform one only, he was as effectually disabled from performing his business as if he could do nothing required to be done, and while remaining in that condition, he would suffer loss of time in the business of his occupation." There is no material difference between the provision now under consideration and involved in the instant case and the provisions of the contract involved in *Commercial Travelers, etc., Assn.* v

*Springsteen, supra,* and *Young* v. *Insurance Co., supra.* See also, *Gross* v. *Commercial Cas. Ins. Co.* (1917), 90 N. J. L. 594, 101 Atl. 169; *Fitzgerald* v. *Globe Indemnity Co.* (1927), 84 Cal. App. 689, 258 Pac. 458; *Fagerlie* v. *New York Life Ins. Co.* (1929), 129 Ore. 485, 278 Pac. 104; *Turner* v. *Fidelity & Cas. Co.* (1897), 112 Mich. 425, 70 N. W. 898, 38 L. R. A. 529, 67 Am. St. Rep. 428.

The court did not err in giving appellee's requested instruction No. 2. We do not deem it necessary to enter in a review and discussion of the refusal to give certain of appellant's requested instructions. We have given each of them careful consideration and find no error in the refusal to give any of them.

Judgment affirmed.