THOMAS K. NICKOLOPULOS, PLAINTIFF-RESPONDENT, v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, A CORPORATION, DEFENDANT-APPELLANT.

Argued May 22, 1934—Decided September 27, 1934.

For the appellant, *Collins & Corbin* (*Edward A. Markley* and *Howard F. McIntyre*, of counsel).

For the respondent, *Lum, Tamblyn & Fairlie* (*James Raymond Berry*, of counsel).

The opinion of the court was delivered by

TRENCHARD, J.   This appeal brings up a judgment of the Supreme Court entered upon the verdict of a jury at the Essex Circuit in favor of the plaintiff below, in a suit to recover on a policy of insurance, dated November 27th, 1927, for monthly disability benefits, the complaint seeking benefits beginning January, 1932, up to and including July of the same year.

Broadly stated, the grounds of appeal requiring consideration are these: (1) that the trial court erroneously refused to grant motions for nonsuit and for the direction of a verdict in favor of the defendant; (2) that the trial court erro-

neously received evidence; (3) that there were errors in the charge.

We think that the motions for a nonsuit and for the direction of a verdict were properly denied.

The application for the policy, which was made a part of the contract, set forth that the occupation of the insured was that of "confectionery owner" and "real estate owner." The policy provided that "if the insured becomes wholly and permanently disabled before age sixty the society will waive subsequent premiums and pay to the insured a disability annuity of two hundred and fifty dollars a month," subject to conditions contained in the policy. The policy contained this provision and condition:

"Disability shall be deemed to be total when it is of such an extent that the insured is prevented thereby from engaging in any occupation or performing any work for compensation of financial value, and such total disability shall be presumed to be permanent when it is present and has existed continuously for not less than three months; and, further, the entire and irrecoverable loss of sight of both eyes, or the severance of both hands at or above the wrists, or of both feet at or above the ankles, or of one entire hand and one entire foot, will of themselves be considered as total and permanent disability within the meaning of this provision."

The evidence at the trial when such motions were made tended to show the following matters of fact, among others: The insured at the time of the trial was fifty-five years old. He was born in Greece and had worked there a few years selling dates. Later he came to this country and learned the candy business and prospered as a manufacturer and retailer of candies. He learned to read a little English, but he could not write anything except his name. He had never been in any business except the confectionery business, coupled with the ownership of a store building and a small apartment house. He knew no other business or occupation. In March, 1929, he contracted a disease known as ostemyelitis, which causes the bone to die and rot away, and he was confined in the hospital for nine months of that year. While so confined

he sold his confectionery business, but retained his real estate. During the year 1930 he limped about on crutches with his leg in a cast, complaining of pain, and underwent a second operation in February, 1931, for the same disease. At that time the "maggot treatment" was given the leg by the doctors after the operation. These operations involved the leg from above the knee to the ankle. He was confined in the hospital until May, 1931, and thereafter he went home and was confined to his home and room, except on sunny days when sometimes he was taken out to expose his leg to the sun. He did no work in 1931. He did no work in 1932, the period for which benefits are claimed, because he could not do any work. He complained of pain almost constantly and slept very little at night, except when drugs were administered to induce sleep. Some days he was unable to get up; on others, he did get up and got around on crutches with the help of attendants, and as soon as he got up the pain compelled him to lie down. He was regularly treated by doctors, and after September, 1932, and prior to the trial, he was again operated on for the same disease.

Now the defendant insists (and this was the basis of the motions to nonsuit and direct a verdict) that the plaintiff had some use of his leg and there were some things he could do, if he could receive such employment, and that therefore there was no total disability.

We think, however, that this question was for the jury, in the circumstances of the case, since the testimony of the plaintiff and his witnesses, both lay and medical, permitted the jury, if it saw fit, to draw the inference that the insured was prevented by his disease from engaging in any occupation or performing any work for compensation of financial value, within the terms of the policy.

We think there was no error in the admission of evidence.

The questions objected to were designed to show whether or not the insured was disabled from following his own or any other occupation for compensation of financial value, and related to his training, occupation, capabilities, and physical and mental qualifications.

The policy covered the insured, not somebody else. It was necessary to determine whether that individual was totally disabled under the terms of the policy. Total disability is largely a relative question. The pertinent question on this phase of the case was, what did this disease do to this individual in the way of disabling him from doing any work of financial value? The answer to that question involves an ascertainment of that individual's training, occupation, capabilities, and physical and mental qualifications. The questions were therefore competent in behalf of the insured. *Storwick* v. *Reliance Life Insurance Co.*, 275 *Pac. Rep.* (Wash.) 550; *Foglesong* v. *Modern Brotherhood of America*, 121 *Mo. App.* 548; *Equitable Life Assurance Society* v. *Serio*, 124 *So. Rep.* (*Miss.*) 485; *Indiana Life Endowment Co.* v. *Reed*, 103 *N. E. Rep.* (*Ind.*) 77; *Ursaner* v. *Metropolitan Life Insurance Co.*, 146 *Misc.* (*N. Y.*) 121.

We also think that there was no prejudicial error in the charge.

The instruction, which the defendant strongly stresses as erroneous, was this:

"Was the plaintiff in the first seven months of 1932, in the light of all the facts and circumstances of this particular case, as you may find them to be, *so affected by his bodily disability that he was thereby prevented from performing any work for compensation of financial value in his regular business and any other pursuit for which he was qualified and which he would reasonably be contemplated to pursue?*"

The defendant's contention is that if the insured was able to do anything at all that might bring in remuneration, then the disability was not effective, and therefore the court's instruction was erroneous. We think not. The instruction was in effect that if the insured was so affected by his bodily disability that he was thereby prevented from performing any work for compensation of financial value "in his regular business and any other pursuit for which he was qualified and which he would reasonably be contemplated to pursue," he might recover for total disability. We think that was right.

The defendant's contention that, if the insured was able to do anything at all that might bring in remuneration he could not recover under such a policy, in other words, that he must be absolutely helpless, has not met with favor in the courts of this state. Such contention finds no support in *Doherty* v. *American Employers', &c.*, 112 *N. J. L.* 52. In *Nickolopulos* v. *Equitable Life Assurance Society*, 11 *N. J. Mis. R.* 371; 166 *Atl. Rep.* 178, the judgment was reversed only because the judge charged that plaintiff was entitled to recover if he was prevented from *performing any and every kind of business relating to his occupation*. But in the case at bar the instruction was much broader than that, the court here adding "and any other pursuit for which he was qualified and which he would reasonably be contemplated to pursue."

And neither did the defendant's contention above stated receive the approval of the Supreme Court in *Barbato* v. *Prudential Insurance Co.*, 11 *N. J. Mis. R.* 355, where substantially the same language was used as to total disability as in the present case, and where on proof certainly no stronger than here, the insured was permitted to recover.

We think that the language of the policy was properly construed by the court in the present case, considering the contract in all its parts. As we have pointed out, the application, made a part of the policy, required and contained a statement of the occupation of the insured. The policy itself provided for payments for total and permanent disability in situations which would not necessarily make the insured absolutely helpless. After providing that disability shall be deemed to be total if the insured is prevented thereby from engaging in any occupation or performing any work for compensation of financial value, it further provided that "the entire and irrecoverable loss of sight of both eyes, or the severance of both hands at or above the wrists, or of both feet at or above the ankles, or of the entire hand and the entire foot, will of themselves be considered as total and permanent disability within the meaning of this provision," thereby casting doubt upon the meaning of the immediately preceding words and tending, to some extent at least, to liberalize them.

Where, as here, there was something to be construed, and the language not being the language of the insured, but the language of the insurer, a construction most advantageous to the insured, not doing violence to the wording, will be adopted. *Connell* v. *Commonwealth Casualty Co.,* 96 *N. J. L.* 510.

·Considering the policy as a whole, we think the court was quite justified in construing the words "from engaging in any occupation or performing any work for compensation of financial value" as meaning: "from performing any work for compensation of financial value in his regular business and any other pursuit for which he was qualified and which he would reasonably be contemplated to pursue."

Such result is supported by reason and the great weight of authority, although there are some decisions to the contrary. That the great weight of authority favors the construction of the policy adopted by the trial judge, is illustrated by the following practically similar cases: *Indiana Life Endowment Co.* v. *Reed, supra; Industrial Mutual Indemnity Co.* v. *Hawkins,* 127 *S. W. Rep.* (*Ark.*) 457; *Monahan* v. *Supreme Lodge of Columbian Knights,* 92 *N. W. Rep.* (*Minn.*) 972; *Storwick* v. *Reliance Life Insurance Co., supra; McCutcheon* v. *Pacific Mutual Life Insurance Co.,* 151 *S. E. Rep.* (*S. Car.*) 67; *Ursaner* v. *Metropolitan Life Insurance Co., supra; Halperin* v. *Equitable Life Assurance Society,* 210 *N. Y. Supp.* 720; *Medlinsky* v. *Metropolitan Life Insurance Co.,* 146 *Misc.* (*N. Y.*) 855.

The policy in the present case should be given a reasonable construction to effectuate the purpose and intent of the parties for which it was made. A fair and reasonable construction should be given to all the language employed, and the relation and situation of the parties as known to the parties when the policy was issued, in order to ascertain the meaning upon which the minds of the contracting parties may reasonably be said to have met at that time.

If we were to adopt the contention of the defendant, the very purpose for which the policy was procured would be destroyed. Even a blind man, or one so crippled as to be

unable to work, might do certain things, such as selling pencils, and yet a reasonable mind would reject as absurd the denial that such a person is totally disabled in the ordinary sense of those words as used in this policy. If an insured has totally lost his ability to earn money in the only way he can, if he is totally unfit and unable to do the only work he knows, he is totally disabled, at least until some new ability to earn his living is created.

The policy must be construed in the light of the facts that must have been known to both of the contracting parties when it was issued. The defendant company then knew that his only occupation had been that of a candy maker. It appeared at the trial that he was illiterate, so taking the insured as he was when the policy was issued, and during the period for which benefits were claimed, if, as the judge charged, it appeared that, during the period for which the claim was made, he was so affected by his bodily disability that he was thereby prevented from performing any work for compensation of financial value in his regular business and in any other pursuit for which he was qualified and which he would reasonably be contemplated to pursue, he was then totally disabled within the meaning of the policy, regardless of the mere possibility, of which there was no evidence, that by education or otherwise he might at some other time become able to earn something by some means not theretofore available.

The foregoing observations adequately dispose of all other objections to the charge.

The judgment under review will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES,· HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 15.

*For reversal*—None.