MAURICE TEITELBAUM, PLAINTIFF-APPELLEE, v. MASSA-
CHUSETTS ACCIDENT COMPANY, DEFENDANT-AP-
PELLANT.

Argued October 2, 1935—Decided November 20, 1935.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the appellant, *Herman E. Dultz.*

For the appellee, *Kanter & Kanter.*

The opinion of the court was delivered by

PERSKIE, J. On May 28th, 1925, the plaintiff, a physician and surgeon, purchased of defendant a contract of indemnification against loss by reason of accident and illness. This contract (policy) among its several provisions, contains the following clauses:

"Part I. Total accident or illness disability. If the insured suffers a disability from accidental injury or disease which necessarily, wholly and continuously disables him from the performance *of any and every kind of duty pertaining to his occupation or business,* the company will pay a weekly indemnity at the rate of One Hundred Dollars ($100.00), per week, during the continuance of such disability until such time as the Insured may engage in a gainful occupation, but no indemnity shall be payable for the first two weeks of disability, as above described."

"No. 14. No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after proof of loss has been filed in accordance with the requirements of this policy, nor shall such action be brought at all unless brought within two years from the expiration of the time within which proof of loss is required by the policy."

On June 14th, 1933, plaintiff became afflicted with a disease described as marked epidemic encephalitis; Parkinsons syndrome. Encephalitis is described as an inflammatory disease of the brain. The effect of this disease on the plaintiff was "that there was a marked disturbance of his gait when he walked, there was a shortening of his steps, he walked in a shuffling manner with a propulsion tendency to fall forward and marked disturbance of his associate movements; that is, when he walked his arms were held rigidly to his side, he did not swing his arms in a normal manner. There was a marked tremor which involved to some degree his entire body, but more particularly, the left arm and leg and head. He had a marked disturbance of his speech in that his speech was slurry, quite indistinct. He had difficulty with fine movement, that is difficulty, in short, in picking up a pin whereas he could lift a suit case. There was a definite impairment of co-ordinated movement. In addition to that, there was a spasm of the eyelids and a rolling of the eyeball upward in the spasm; uncontrollable spasm of the eyelids. He also had considerable rigidity, especially of the left arm and leg. There were tremors of the face and tongue and there were at times uncontrollable emotions, outbursts of laughing or crying which were not under control and which occurred without sufficient provocation."

Defendant paid plaintiff the weekly sum of $100 from June, 1933, to February 5th, 1935; thereafter it stopped further payments. Whereupon, on March 11th, 1935, plaintiff caused two suits to be instituted in the First District Court of Newark against defendant, case No. 181644 for payments due under the policy, covering the period from February 5th, 1935, to March 5th, 1935, and case No. 182134 for the period from March 5th, 1935, to April 2d, 1935. No proof of loss, as required by section 14 of the policy, was filed with the defendant.

The proofs at the trial disclosed that the assured was an active practitioner, treating approximately one hundred and forty patients a week. His practice was of a general character; he was a surgeon and he had a large obstetrical practice. Dr. L. Beverly Chancy, of New York, a neurologist of high repute, testified, and there was no medical testimony offered in opposition thereto, that "my opinion is that he [plaintiff] is totally incapacitated from carrying on professionally both as a physician and as a surgeon." And the proofs disclose the following observation by the court: "The court: Let it appear upon the record that the witness seems to have some difficulty in enunciating his words, and particularly professional words."

Against this and other formidable array of evidence of the physical and mental wreckage of the plaintiff the defendant offered proof that, during the period for which plaintiff seeks recovery here, he treated some seven patients, gave a hypodermic injection to one patient, wrote about fourteen prescriptions and kept up his offices, which were in his home. All of this, of course, for the alleged purpose of showing that plaintiff was not totally disabled within the terms of the policy. As a matter of fact, plaintiff himself admitted that during the same period he treated not only these patients but that he treated about four patients a day. He, however, explained that he treated only those patients "which I could handle very easily." He could not, he said, with safety even give hypodermic injections; that he was wholly and continuously unable to do any and every kind of duty pertaining to his occupation or business. He could do no surgery; he could not do obstetrical work, &c.

Motions for a nonsuit and directed verdict in favor of the defendant on the grounds that the plaintiff was not wholly and continuously disabled within the provisions of the policy and that the suits were prematurely brought, were denied. The trial judge, basing his finding on the "uncontradicted medical testimony on the part of the plaintiff" and his "observation of the plaintiff on the witness stand," entered a judgment of $408 in favor of the plaintiff and against the defendant.

First: It is the well settled law where the language of a contract, as here, requires construction we adopt that construction, not doing violence to the wording, most advantageous to the insured. *Connell* v. *Commonwealth Casualty Co.*, 96 *N. J. L.* 510; 115 *Atl. Rep.* 352; *Nickolopulos* v. *The Equitable, &c., United States,* 113 *N. J. L.* 450, 456; 174 *Atl. Rep.* 759. The construction of each contract depends upon its particular wording. The meaning of the language in question, "any and every kind of duty pertaining to his occupation or business," has received judicial construction by our courts. It is "not that he [assured] must be so disabled as to prevent him from doing anything whatsoever pertaining to his occupation, *but that if he be so disabled as to prevent him from doing any and every kind of business* pertaining to his occupation, he was entitled to recover." *Gross* v. *Commercial Casualty Insurance Company of Newark, New Jersey,* 90 *N. J. L.* 594; 101 *Atl. Rep.* 169; *Doherty* v. *American Employers, &c., Massachusetts,* 112 *N. J. L.* 52; 169 *Atl. Rep.* 652. Nor is the case of *Nickolopulos* v. *Equitable, &c., United States, supra,* to the contrary. The particular provision there involved is entirely unlike to the one here in issue. The proofs here fully support the result reached.

Second: Were the suits prematurely instituted? (Section 14 of the policy.) We think not. The proper proofs here clearly indicate, and the subsequent conduct of the defendant fully prove that defendant had determined not to make any further payments on the policy. Under such circumstances the defendant waived this provision; plaintiff was, therefore, privileged to institute suit at once. *State Insurance Co.* v. *Maackens,* 38 *N. J. L.* 564; *Cheshansky* v. *Merchants Fire Insurance Co.,* 102 *Id.* 414; 131 *Atl. Rep.* 910; *Radwanski* v. *Scottish Union, &c., Co.,* 100 *N. J. L.* 192; 126 *Atl. Rep.* 657; *Evans* v. *Farmers' Reliance Insurance Co.,* 110 *N. J. L.* 159; 164 *Atl. Rep.* 258.

In fine, it is rather difficult, if not impossible, to reconcile defendant's action prior to these suits with its present claims that there is no liability on its part in the premises. The record fails to disclose that defendant even questioned its

liability towards the plaintiff before these suits. As a matter of fact, as already stated, it paid the plaintiff the weekly indemnity from June, 1933, to February 5th, 1935; it did not, even in these suits, offer any medical proof in opposition to that offered for the plaintiff. *Exhibit P-2* (letter of Victor R. Watson, superintendent N. C. Claims Division), was, of course, properly rejected as evidence of an unaccepted offer of compromise of $10,000 for a release of defendant's liability to the plaintiff under the policy. But there is, however, other ample and persuasive proof of the obvious reason for the refusal by the defendant to make further payments under its policy; it sought to buy its peace at its own price.

We have carefully examined all other points and do not find in them any error which injuriously affected the substantial rights of the defendant.

Judgment is affirmed, with costs.