METROPOLITAN LIFE INSURANCE CO. *v.* HEAVENER

[No. 16,203. Filed January 22, 1940. Rehearing denied March 6, 1940. Transfer denied April 30, 1940.]

*Rupe, Brown & Reller,* for appellant.
*Paul Brown,* for appellee.

DUDINE, J.—This is an action by appellee, Robert W. Heavener, against appellant, Metropolitan Life Insurance Company, to recover payments allegedly due appellee under the terms of a group insurance policy issued by appellant to the F. W. Woolworth Co. which policy allegedly covered appellee, as an employee of said F. W. Woolworth Co., against total and permanent disability.

It would serve no good purpose to discuss the pleadings. They are not attacked upon appeal. The issues having been formed by a complaint in one paragraph and an answer in general denial the cause was submitted for trial to a court without a jury and the court found for appellee that he should recover the sum of $2160.00 and rendered judgment in accordance with such finding.

There is but one error assigned upon appeal and that is contended error in overruling a motion for new trial filed by appellant. The causes for new trial which are presented upon appeal are: 1—The decision is not sustained by sufficient evidence; 2—The decision is contrary to law, and 3—Errors in the admission of certain evidence.

In support of each of said first and second assigned causes for new trial appellant contends that the evidence conclusively shows that appellee was not "totally and permanently disabled", within the meaning

of that term as used in paragraph "13" of said group insurance policy, on or before the 9th day of January, 1936, when liability under the policy ceased. That is appellant's primary contention upon appeal.

The provisions of said insurance policy which are particularly pertinent to this appeal are:

"13. Total and Permanent Disability Benefits:—Upon receipt, at the Home Office in the City of New York, of due proof that any Employee, while insured hereunder, and prior to his sixtieth birthday, has become totally and permanently disabled, as the result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, the Company will, in lieu of the payment at death of the insurance on the life of the said Employee, as herein provided, pay equal monthly instalments, as hereinafter described, to the said Employee, ... ".

"6. Insurance to Be Discontinued.— . . . (a) . . . The insurance hereunder, as to each such Employee, shall be discontinued as of the date when such Employee left the employ of the Employer. . . .".

The evidence indisputably shows that appellee was employed by the F. W. Woolworth Co. as manager of its store in New Castle, Indiana, from September 1928, until January 9, 1936.

The evidence further shows that in 1931 appellee injured himself while lifting something in the store and the injury caused a pain in his back which continued about a month. In the spring of 1933 there was a recurrence of the pain and it lasted about six weeks. In the fall of 1933 there was another recurrence of the pain; it started about the 1st of October and continued intermittently until sometime in January, 1934. Appellee again suffered the pains in the spring and fall of 1934. In January 1935, upon the advice of his

doctor, he had his tonsils removed and was off work about two weeks. He thereby obtained relief from the pains but in May 1935 the pains recurred and appellee became "quite nervous". That condition continued throughout the summer and fall of 1935. Appellee was suffering from pains in his back "all the time". In the summer of 1935 he suffered headaches and "along in August and September (1935) they (the headaches) became quite severe and in December (1935) . . . (he) couldn't work without sedatives." In December 1935 appellee couldn't keep food on his stomach; he lost eighteen pounds; he frequently took an extra hour for lunch and came home in the middle of the afternoons to take infra-red light treatments and to rest. Appellee "went through the (1935) Christmas rush (in the store) and inventory in rather a dazed condition . . . (he) couldn't seem to know what was going on about him a good deal of the time . . . (he) couldn't . . . answer questions straight . . . "; he was very forgetful; the pains were severe and continuous during the time he was awake except when they were relieved by medicine. He continued to work in spite of severe headaches and in a dazed condition until January 9, 1936 when a supervisor of the F. W. Woolworth Co. approached him at the store and delivered to him a letter from the company asking him to resign, whereupon he did resign on that date. (The evidence does not show *why* appellee was asked to resign.) During the next two months appellee was confined to his home. From that date until the date of the trial (July 1937) he was able to "get around" but suffered the pains and took medicine to relieve the pains. He did not perform any steady work in that period of time.

A doctor who treated him in 1935 for rheumatoid symptoms found him "very nervous, very exhausted"

at that time and treated him throughout November, December and January of 1936. That doctor also examined appellee shortly before trial (July 1937) and testified that he thought appellee was totally disabled on January 1, 1936.

Another doctor, who had examined appellee but once, and that being shortly before trial, testified in effect that, in his opinion, appellee was totally disabled when he quit working.

It should be noted that this appeal is not based upon the contention that the evidence shows that appellee's disability, which existed on January 9, 1936, was not "permanent" but it is based upon the contention that the evidence indisputably shows that appellee's said disability was not "total" within the meaning of that word as used in paragraph "13" supra of the policy.

"The rule prevails in this and most jurisdictions that provisions in a policy for total disability, irrespective of the technical variations in the language employed, should be given a rational and practical construction; that the phrase "total disability" is a relative term, depending in a measure upon the nature of the employment, the capabilities of the injured person, and likewise the circumstances and peculiar facts of each particular case. It is usually a question of fact to be determined by the court or jury trying the case . . . . . ." *American Liability Co.* v. *Bowman* (1917), 65 Ind. App. 109, 114 N.E. 992.

In the instant case the question as to whether or not appellee was "totally disabled" was a question of fact to be determined by the court.

*Commercial Travelers, etc., Association* v. *Springsteen* (1899), 23 Ind. App. 657, 55 N. E. 973, was a suit upon an accident insurance policy which provided that "no claims of any character shall accrue upon

this contract unless it arises from bodily injury . . . (which) immediately and wholly disables the insured from performing any and every kind of business pertaining to his occupation as above stated.'' The trial court instructed the jury, with reference to said provision, as follows (p. 671):

" '. . . I instruct you that as a matter of law the meaning of this provision of the policy is not that the plaintiff must have been disabled so to prevent him from doing anything whatsoever pertaining to his said occupation, but that he must have been disabled only to the extent that he could not do any and every kind of business pertaining to his said occupation. He might be able to do a part and not be able to do all, and because he was not able to do all be deemed to be wholly disabled from doing any and every kind, provided, of course, that he was so disabled as to be prevented from doing substantially all the necessary and material things in said occupation requiring his own exertions in substantially his customary and usual manner of so doing. He might be able to do personally minor and trivial things, not requiring much time or physical labor, and through others, acting under his direction, to do the heavier things requiring physical exertion, which in the ordinary and proper performance of his duties he had heretofore done personally, and yet because of inability to do these heavier things and more material things personally, be said to be wholly disabled within the terms of his policy; provided, further, that the things he was unable to personally do constitute substantially all of his said occupation.' "

This court, upon appeal, reviewed several foreign authorities wherein similar provisions in insurance policies were construed and then said "We make no attempt to harmonize the decisions cited; but in view of the liberal rule of construction, which holds that, where the language used in a policy of insurance is

capable of two constructions, the one most favorable to the assured must be given,—which rule has been adopted in this state,—the instruction fairly stated the law as announced by the weight of authority. (Citing authorities).''

The case of *Commercial Travelers, etc., Association* v. *Springsteen* supra was followed in *Great Northern Casualty* v. *McCullough* (1932), 96 Ind. App. 506, 174 N. E. 103 wherein a similar provision of an insurance policy was involved and a similar instruction was given to the jury and this court upon appeal held that the trial court did not err in giving the instruction.

*Metropolitan Life Insurance Co.* v. *Katherine N. Schneider* (1935), 99 Ind. App. 570, 193 N. E. 690, involved an insurance policy which provided that the insurance company would pay certain monthly installments, provided that the insured ''has become totally and permanently disabled . . . so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit . . . .'' This court upon appeal said, with reference to such insurance policy, ''Such a contract . . . does not refer to and will not be construed to mean that before the insured is entitled to recover that there must be made a showing of utter helplessness. It must be given a reasonable construction.'' *Metropolitan Life Insurance Company* v. *Schneider,* supra was followed in *Prudential Insurance Company of America* v. *Martin* (1936), 101 Ind. App. 320, 196 N. E. 125.

The rule requiring that provisions in insurance policies be given reasonable construction was also applied in the recent case of *Railway Mail Associa-*

*tion* v. *Schrader* (1939), ante 235, 19 N. E. (2d) 887. (Petition to transfer denied December 11, 1939).

Our guide in construing provisions in insurance policies, including provisions with respect to total disability, is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract. See *Bird* v. *St. Paul Fire and Marine Insurance Co.* (1918), 224 N. Y. 47, 120 N. E. 86 followed in *Railway Mail Association* v. *Schrader* supra.

We think the F. W. Woolworth Co., or an ordinary business man under similar circumstances, could reasonably have expected, when the policy of group insurance was accepted, that although it contained said clauses "13" and "6", it would cover an employee who was injured as appellee was injured, who suffered ill health as appellee suffered, and who "hung on" to his job in spite of his failing health until his employer requested his resignation and thereupon resigned, all as appellee did.

We think that the evidence, when considered together with inferences favorable to the decision which inferences can reasonably be drawn from the evidence, sustains a finding of the following facts, to wit: That appellee was in fact "totally and permanently disabled", within the meaning of that term as used in the policy, before January 9, 1936; that in fairness to himself, to his employer and to appellant insurance company, he should have laid off before his employer requested his resignation, but that he "hung on" to his job because the Christmas rush and annual inventory were pending and his sense of loyalty to his employer impelled him to "carry on" in spite of his declining health.

Since the evidence sustains the finding that appellee was "totally and permanently disabled" before Jan-

uary 9, 1936, the evidence would have warranted a recovery under the policy if appellee had quit working before that date on account of such disability; certainly he should not be denied the benefits of the policy simply because he "hung on" to his job after he became so disabled and until his employer requested his resignation. To hold otherwise would strongly tempt employees to quit their work and claim total disability benefits for comparatively weak or insignificant causes and would eventually prove much more burdensome to insurance companies.

We hold that the evidence sustains the finding of the court that appellee was "totally disabled" on or before January 9, 1936 within the meaning of that term as used in the insurance policy and we hold that the decision of the court is not contrary to law.

Appellant complains of the admission of evidence by a doctor concerning appellee's condition shortly before trial. The objection made in the trial court was in effect as follows: The disability is alleged to have occurred in January 1936, the suit was filed in August 1936, this evidence relates to an examination made in July 1937 and any evidence based on such examination is irrelevant to the issues because the examination was made a year and a half after the alleged disability.

We deem it sufficient to say with reference to said evidence that it was admissable, if for no other purpose, to prove how long, if at all, appellee remained "totally disabled".

We have considered all of appellant's points in support of contended error in admission of evidence and have concluded that no reversible error is shown under any of said points. No reversible error having been shown the judgment is affirmed.