WILBURN ROSS *v.* FARMERS INSURANCE EXCHANGE.

[No. 1270A281. Filed December 27, 1971. Rehearing denied February 3, 1972. Transfer denied June 29, 1972.]

*Larry L. Busick,* of Decatur, for appellant.

*Leonard E. Eilbacher, Hunt, Suedhoff, Borror & Eilbacher,* of Fort Wayne, for appellee.

SHARP, J.—This is an appeal from the granting of Summary Judgment for the Defendant-Appellee Farmers Insurance Exchange, against Plaintiff-Appellant, Wilburn Ross, upon an insurance contract for the payment of disability benefits under a policy issued by the Appellee.

On January 30, 1967, Plaintiff-Appellant, while alighting from his automobile in a bowling alley parking lot, slipped on the ice, striking the small of his back on the frame of the door. At the time of the accident, Appellant was insured by Appellee under an automobile policy which contained an endorsement entitled "Automobile Accidental Death Indemnity, Total Disability and Specified Disability Benefits." The endorsement provided for various benefits, the one pertinent to this action being a weekly indemnity of $50.00 for the period of continuous total disability. The endorsement provided in part as follows:

"PART II—Total Disability.

To pay weekly indemnity in the amount stated in the schedule for the period of continuous total disability of the insured which shall result directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while in or upon, or while entering into or alighting from, or through being struck by an automobile provided, (1) Such disability shall commence within twenty days after the date of the accident, and (2) Any disability during the period of fifty-two weeks from its commencement shall be deemed total disability only if it shall continuously prevent the insured from performing every duty pertaining to his occupation, and (3) Any disability after said fifty-two weeks shall be deemed total disability only if it shall continuously prevent the insured from engaging in any occupation or employment for wage or profit."

Because of the accident, Appellant was unable to return to his position as a "sub-assembler" with International Harvester until May 8, 1967, and during the period commencing January 31, 1967, until said date, Appellant received the specific weekly benefits accruing under the policy. On May 8, 1967, Appellant was released by his doctor and returned to his regular position of employment and remained in said position until November 6, 1967, when he was bumped back to a laborer. Upon Appellant's return to work, he was given a B-2 classification, signifying a restriction made for a correctible condition with a limitation of no heavy lifting. Appellant continued to work for International Harvester at various jobs requiring manual labor until May 24, 1968, at which time, Appellant underwent back surgery and was totally disabled for approximately eleven (11) months. The back surgery was for the purpose of correcting an anomaly of the spine (spondylolisthesis) which may or may not have been attributable to the earlier accident. On April 29, 1969, Appellant returned to work for International Harvester and has continued to be employed at the highest rate of pay he has ever received although he does carry a medical classification of "C-2," which has a heavy lifting restriction.

On the basis of the foregoing facts as revealed by the deposition, affidavits and documents, the trial court made its findings of fact and conclusions of law, which omitting the formal parts reads as follows:

## "FINDINGS OF FACT

1. On January 19, 1967, plaintiff and defendant entered an automobile insurance contract which contained a rider entitled "Automobile Accidental Death Indemnity, Total Disability and Specific Disability Benefits," which is attached to plaintiff's complaint herein as Exhibits A and B and incorporated by reference herein.
2. Plaintiff was injured on January 30, 1967 while alighting from the automobile insured by said contract of insurance.
3. Plaintiff was continuously and totally disabled from January 30, 1967 through May 7, 1967.
4. Defendant fully paid plaintiff the weekly indemnity benefit of Fifty Dollars ($50.00) from January 30, 1967 through May 7, 1967.
5. Plaintiff performed the duties of his usual occupation continually during the period commencing May 8, 1967 through May 23, 1968, during which period plaintiff was not totally disabled.
6. Plaintiff was not continuously and totally disabled after May 7, 1967.
7. Defendant has fully paid to plaintiff all weekly indemnity benefits due and owing under said contract of insurance."

## "CONCLUSIONS OF LAW

1. The Court has jurisdiction of this cause.
2. The law is against the plaintiff and with the defendant on plaintiff's complaint.
3. The law is with the defendant and against the plaintiff on the motions for summary judgment of plaintiff and defendant.
4. There is no genuine issue as to the foregoing findings of fact material to the cause of action alleged in plaintiff's complaint.
5. Plaintiff shall take nothing by his complaint against defendant, and costs herein shall be taxed against the plaintiff."

The question presented for determination is whether summary judgment may be a proper vehicle for the interpretation of "continuous, total disabilty" under an insurance contract, and, collaterally, whether this specific factual situation was one in which there was no issue of a material fact so as to make summary judgment appropriate.

Therefore, the first task before us is to interpret the language of the specific contract and in this regard, it is to be noted that this is the first time this court has been called upon to interpret language employed by an insurance company to delineate and distinguish the types of disability that will be indemnified before and after a lapse of a specified number of consecutive weeks. Thus, the policy enumerates two definitions of continuous total disability, the first requiring that the insured be continuously unable to perform every duty pertaining to his occupation and the second, requiring that after fifty-two weeks the insured shall be deemed totally disabled only if he be unable to engage in any occupation or employment for wage or profit.

One of the earliest and most comprehensive discussions concerning the definitions to be given the various terms contained in such policies is contained in *Jacobson* v. *Mutual Ben. Health & Accident Ass'n.*, 70 N. D. 566, 296 N. W. 545, 552-553 (1941), which stated:

> "*It is recognized that the principal object of a stipulation in an accident policy requiring payment for total disability is to indemnify the insured against loss resulting from inability to work* (citations omitted) and the great weight of authority is to the effect that the terms 'wholly disabled' or 'totally disabled' in an accident insurance policy do not mean a state of complete physical and mental incapacity, or utter helplessness, as a strict, literal construction of such terms might imply; but mean rather inability to do all the substantial and material acts necessary to carry on the insured's business or occupation, or any business or occupation, in a customary and usual manner, and which acts the insured would be able to perform in such manner, but for such disability. (citations omitted)

"If the policy is of the 'occupational' type and undertakes to insure against disability to transact a certain business or to perform labor in a particular occupation in which the insured is engaged, the insured is 'wholly disabled' within the meaning of the policy if the infirmity resulting from the accidental injury is such as to render the insured unable to to do all the substantial and material acts necessary to the prosecution of the insured's business, or in the carrying on of his occupation, and which acts he would be able to do and perform were it not for the disability. (citations omitted)

"If the policy is of the 'general' type and under-takes to insure against loss only in case the insured shall become 'wholly disabled' or 'totally disabled,' and there are no words limiting the disability to a particular business or occupation, the insured becomes 'wholly' or 'totally' disabled, within the meaning of the policy, if the infirmity occasioned by the accident in fact renders the insured unable to carry on any business, or renumerative vocation, which business or vocation the insured would be qualified, physically and mentally, to carry on if it were not for such infirmity. (citations omitted)
\* \* \* \* \*

"Where an accident policy includes the element of continuity and undertakes to insure only for loss resulting from bodily injuries that 'wholly and continuously' disable the insured, the word *'continuously' means regularly, protracted, enduring and without any substantial interruption of sequence, as contradistinguished from irregularly, spasmodically, intermittently or occasionally. Continuously does not necessarily mean constantly (Bodfish* v. *Bodfish,* 105 Mass. 317, 319) ; *nor does it denote ceaseless and absolute continuity."* (citations omitted) (our emphasis)

Also, the test of total disability was recently defined in *Ladley* v. *Saint Paul Fire & Marine Insurance Co.,* 73 Wash. 2d 928, 442 P. 2d 983, 985 (1968) where it was stated:

"What constitutes total disability within the meaning of an insurance policy comprehending benefits of one kind or another has been the subject of much litigation, but is now reasonably well settled in this and other jurisdictions. In *Storwick* v. *Reliance Life Ins. Co.,* 151 Wash. 153, 158, 275 P. 550, 552 (1929), Judge Parker cited a large number of cases from various states which had adopted what was

referred to as the liberal view of construction of unqualified, total disability clauses, and said:

'It seems to us that one is totally disabled within the meaning of these policies when he is so far disabled that he cannot, with any degree of success, within the range of his normal capabilities, earn wages or profit in some occupation or gainful pursuit.' "

Perhaps a synthesis of the best cases from all jurisdictions on the topic of continuous disability is contained at 45 C.J.S., *Insurance*, § 901 (d), entitled "Continuous or Recurring Disability," as follows:

"In the absence of a provision in the contract to the contrary, where a totally disabled person apparently recovers and resumes the pursuit of his usual occupation for a time, and then becomes totally disabled again, he is entitled to the indemnity provided in case of total disability for both periods if within the number of weeks limited by the policy.

"Where an accident policy includes the element of continuity and undertakes to insure only for loss resulting from injuries that 'continuously' disable insured, the word 'continuously' means regularly, protracted, enduring, and without any substantial interruption of sequence, as distinguished from irregularly spasmodically, intermittently, or occasionally. 'Continuously' does not mean constantly, nor does it denote ceaseless and absolute continuity. Thus, under such a policy, the continuity of the disability is not broken by the fact that insured returns to his work at long intervals, and for only short periods, while still suffering from the injury, but the continuity is broken where insured for protracted periods after the injury performs his regular duties. Where the policy defines disablement as continuous disablement and inability from date of accident to perform any and every business duty or occupation, there can be no recovery for total disablement following a period of partial disablement. Where the policy provides for monthly indemnity for injuries which within a stated time after the accident wholly and continuously disable insured, and insured within that time becomes totally disabled and such total disability continues for a time, after which a period of partial disability as to such last period, extra indemnity provided for results continues, which is immediately followed after the time limited in the policy by another period

of total disability, insured is not entitled to recover under the total disability clause for the last period of total disability; nor can he recover, hospitalization during total disability for which monthly indemnity is payable. Under such circumstances, however, the disability is continuous within a provision of the policy providing for indemnity for continuous partial disability immediately following total disability, and insured is entitled to compensation for partial disability for the second period of total disability, under the rule that the greater claim includes the lesser. Under a policy providing for indemnity for total disability for the period during which, independently of all other causes, the injury alone wholly and continuously disables insured, the company is not entitled to deduct from the period of total disability an intervening period during which insured was confined to her bed by reason of childbirth."

In both provisions, the policy requires that the insured be both continuously and totally disabled. The first refers to continuity of the inability to engage in employment and in *Morgan* v. *Aetna Life Ins. Co.*, 157 F. 2d 527, 529 (7th Cir. 1946), relying on Indiana authority, it was stated:

"A careful survey of the precedent and text authorities shows a liberal construction of such policy provisions as is here involved, so that mere triviality of service, or service negligible in character compared to the ordinary tasks performed, is not to be held to transform permanent disability into partial, or interrupt continuity of disability thereby precluding recovery."

Likewise, total disability has been liberally construed in Indiana so that it does not mean a state of utter helplessness, and the fact that a person attempted to work, when because of impaired health, he should not have done so, will not support a conclusion that a person was not totally and permanently disabled. *New York Life Ins. Co.* v. *Hubbell,* 111 Ind. App. 631, 40 N. E. 2d 352 (1942).

But, while the courts are committed to a liberal interpretation of such policy provisions in favor of the insured, it does not mean that we are allowed to rewrite the provisions

under which the parties contracted. This limitation was recognized in *Tschida* v. *Continental Casualty Co.*, 264 N. Y. S. 2d 72, 75, 48 Misc. 2d 71 (1965), where the Appellate Division of the Supreme Court of New York stated:

"In *Williams* v. *John Hancock Mut. Life Ins. Co.*, 245 App. Div. 585, 283 N. Y. S. 87 (4th Dept. 1935), rehearing denied 246 App. Div. 891, 285 N. Y. S. 840 (1936), the Court in discussing the disability clause of a life insurance policy providing for benefits in the event the assured is prevented from engaging in any occupation for wage or profit, stated as follows at pages 586, 587, 283 N. Y. S. page 89:

'We cannot by our construction of that contract increase the risk assumed and thus extend the resulting liability. 'We are not at liberty to revise while professing to construe.' [Case cited] On the other hand, the contract should not be given such a strict and literal construction as to deny its benefits to an assured whose disability may have reduced his capacity for work to a type of possible employment far below, and entirely out of line with, the usual forms of gainful occupations.

'We propose to construe the contract reasonably and to give it practical application. Accordingly we rule that the total disability contemplated by the particular group policy of insurance before us which would justify recovery thereunder is such an infirmity from bodily injuries or disease as will continuously prevent the assured \* \* \* from engaging in any of the common forms of employment for wage or profit for which he is reasonably qualified.'

"This rule was followed in *Weisser* v. *Travelers Ins. Co.*, 258 App. Div. 755, 15 N. Y. S. 2d 430 (2d Dept. 1939). There the clause 'total disability to engage in any occupation or employment for wage or profit' was held to mean an inability of such an extent that the assured was 'unable to perform services of the type required in commonly accepted occupations or forms of employment.'" (citations omitted)

In construing a similar policy, the Washington Supreme Court in *Tucker* v. *Bankers Life & Casualty Co.*, 67 Wash. 2d 60, 406 P. 2d 628, 23 A. L. R. 3d 1098, 1104 (1965) stated:

"The defendant contends that the requirement that the plaintiff suffer total loss of business time was intended by the parties to mean that the insured could recover benefits only if he were totally disabled from performing each and every duty or function of *any occupation*. Relative to the first 12-month period we believe that the provision as to total loss of business time relates to the inability of the plaintiff to perform the duties of his regular and customary occupation. Otherwise, inclusion of the phrase, 'performance of the duties of his regular and customary occupation,' would be meaningless. We have said that a writing which gives effect to all of its provisions is to be favored over one which renders some of the language meaningless or ineffective. (citations omitted)

"The defendant argues that in no event can the plaintiff recover benefits for the second 12-month period since the policy provides that the insured must be totally disabled from performing 'each and every duty or function of *any occupation* and shall suffer total loss of business time.'

"We agree. The first and second 12-month periods are treated in separate categories in section 3 of the policy. In the second period, the phrase relative to the performance of the duties of 'his regular and customary occupation' is omitted and the language 'any occupation' is substituted. The rule is well settled that we may not modify clear and unambiguous language in an insurance contract. *McKillips* v. *Railway Mail Ass'n.*, 10 Wash. 2d 122, 130, 116 P. 2d 330 (1941) ; 149 A. L. R. 19, 152; *Kuhnle* v. *Mut. Life Ins. Co.*, 20 Wash. 2d 255, 265, 147 P. 2d 281 (1944) ; *Patterson* v. *Bixby, supra;* 45 C. J. S. Insurance § 898 b (2). In construing a similar provision in the case of *McKillips* v. *Railway Mail Ass'n., supra,* we said :

"The wording of the certificate before us, above quoted, is definite and precise. The language of the paragraph providing for benefits in case of permanent disability, while not referring to the insured's ordinary occupation, makes it a condition of liability under the policy that the insured shall be wholly incapacitated from performing *any labor or following any occupation*. This language is plain and unambiguous, and the courts, have no authority to enlarge appellant's liability under its contract beyond the plain terms thereof. As stated by the circuit court of appeals, in *Metropolitan Life Ins. Co.* v. *Foster,* 5 Cir., 67 F 2d 264, 265:

" 'The parties were free to contract for any risks they chose adjusting the premium charge to the risks assumed. . . . We have no more right to enlarge the liability by artificial construction of the policy than to increase the penalty of a bond or raise the face of a promissory note.' "The record does not show whether the plaintiff sustained such a disability as would qualify him for benefits under the second 12-month period, as provided in the policy."

All of these cases interpreting such words as "continuous" and "total" disability are in the negative, that is, they state the minimum requirements necessary at the bottom end of the scale to negate a conclusion of continuous or total disability. But, it must also be true that there comes a point, either in length of service or amount of work performed, when a person's services are not so trivial or insubstantial as to necessitate placing the issue before the trier of fact. The delineation between a question of fact and a question of law is, in this regard, one of degree and is perhaps best viewed as a line or scale, the outer most periphery at both ends being so clear that the court as a matter law can determine the issue, while toward the middle of the scale the issue becomes gray and unclear thereby presenting a fact question for the trier of fact. The courts have never enunciated exactly at what point, in construing continuous total disability under an insurance policy, the outer most periphery is reached and we do not attempt to do so here. But, we do believe that under the undisputed facts of this case, the trial court was correct when it found as a matter of law that Appellant was not continuously, totally disabled.

Appellant argues that summary judgment can never be appropriate as to the issues of continuous total disability and medical expenses under an insurance policy. To support this contention, Appellant relies primarily on *Aetna Life Ins. Co.* v. *Spencer*, 101 Ind. App. 355, 195 N. E. 598 (1935), where this court said:

"The question as to whether or not a person is permanently disabled and will, for life, be unable to do any work or con-

duct any business for compensation or profit is a question of fact for the jury and where there is any competent evidence to sustain such verdict it must stand. *American Liability Company* v. *Bowman* (1917), 65 Ind. App. 109, 114 N. E. 992. . . ."

However, *American Liability Co.*, relied on in *Aetna, supra,* for the above proposition contained a qualifier in that "it is *usually* a question of fact to be determined by the court or jury trying the case . . ." We agree that generally the question is one of fact for the trier of fact, but this does not exclude the possibility of summary judgment being appropriate in certain factual situations.

The purpose of a motion for summary judgment is not to test the sufficiency of the pleadings, but is to enable the court "by piercing the pleadings, to establish the existence, or conversely, the non-existence of a material fact." *Pan American World Airways, Inc.* v. *Local Readers Service, Inc.* 143 Ind. App. 370, 240 N. E. 2d 552, 555 (1968). Judge Eschbach has written that the motion for summary judgment "is available in all civil actions and is designed primarily to eliminate unnecessary trials and to dispose of sham claims and defenses." Eschbach, *Summary Judgment in Indiana: Some Observations based upon the Federal Experience,* 3 Ind. Practice, 560-561.

The general principles involved in a motion for summary judgment were recently summarized by this Court in *Doe* v. *Barnett,* 145 Ind. App. 542, 251 N. E. 2d 688, 695 (1969), as follows:

> "1. § 2-2524 of Burns' Indiana Statutes Annotated (now Rule TR 56, Indiana Rules of Civil Procedure) is patterned after Rule 56 of the Federal Rules of Civil Procedure and therefore federal case law and treatises interpreting Rule 56 are relevant.
>
> 2. The purpose of summary judgment is to provide a procedural device for the prompt disposition of cases in which there is no genuine issue as to material fact to be determined by the court or jury.

3. The trial of genuine issues as to material facts by pleadings, depositions, answers to interrogatories and admissions and affidavits is not permitted as a part of summary judgment procedure.

4. The burden is on the proponent of a motion for summary judgment to conclusively demonstrate the absence of any genuine issue as to a material fact and that such proponent is entitled to a judgment as a matter of law.

5. If the proponent of a motion for summary judgment has sustained the burden referred to in number 4, *supra*, then the burden is on the respondent to demonstrate the existence of a genuine issue as to a material fact or summary judgment, if appropriate, will be entered.

6. Any doubt as to the existence of a genuine issue as to a material fact much be resolved against the proponent of a motion for summary judgment.

7. The contents of pleadings, depositions, answers to interrogatories, admissions and affidavits must be liberally construed in favor of the respondent to a motion for summary judgment and the facts asserted by such respondent supported by affidavit must be taken as true.

8. Summary judgment is seldomly appropriate in negligence cases where the standard of the reasonable man must be applied to conflicting evidence. Even in cases of undisputed fact it is usually for the trier of facts to determine whether the conduct in question met the standard of the reasonable man.

9. If there is a question as to the state of mind, credibility of witnesses or weight of testimony summary judgment should be denied.

10. Even where the trial judge may surmise that the proponent of a motion for summary judgment is likely to prevail at the trial, this is not a sufficient basis for refusing the respondent to a motion for summary judgment his day in court with respect to any genuine issue as to a material fact."

As pointed out earlier, we believe that there are instances where summary judgment would be appropriate for the determination of continuous, total disability under an insurance policy. We cannot agree with the Appellant that it is always

a question of fact for the trier of fact and that there can never be a case in which the undisputed facts would not entitle an insurer to summary judgment on the issue of whether the insured had a "continuous, total disability." Unlike negligence cases, the undisputed facts are not juxtaposed against the standard of a reasonable man, but rather such facts are interpreted against a specific policy provision, and there are certain situations which clearly show that the insured has not brought himself within the confines of the policy.

Appellant has raised no other issue on this appeal nor has he set out in his brief those parts of the record which he believes show a genuine issue as to a material fact. While we might be justified in letting the matter rest, we feel obligated to decide the merits of the controversy and have diligently searched the record for that purpose. Considered in the light most favorable to the Appellant as the Respondent to the motion for summary judgment, the record in this case fails to disclose an issue of material fact so as to preclude the Appellee from receiving a judgment as a matter of law.

This writer has always taken a liberal view of the contents of briefs. See *Willsey* v. *Hartman,* 149 Ind. App. 5, 269 N. E. 2d 172 (1971). However, the inadequacies of the Appellant's brief have rendered it little help to the Court in this case. In a brief of 27 pages plus 4 pages of caption, table of contents and table of authorities, there appear no less than 47 typographical errors which were corrected in pen and ink. Our liberality should not be considered a license to do sloppy work. The filing of the complaint is mentioned in the Appellant's brief, but is in no way adequately summarized. In the argument section of the brief, the Appellant does not cite a single case even remotely related to summary judgment although this court and our Supreme Court have decided more than 30 cases dealing with summary judgment in the last 5 years. Additionally, in oral argument, the Appellant purported to rely, in part, on a deposition of Dr. Paul Reszel, an

orthopedic surgeon who treated the Appellant. Yet, this deposition is neither mentioned or summarized in this brief. We realize that our function here involves more than simply grading lawyers' papers. Therefore, we have taken the trouble to make a complete examination of the record in this case notwithstanding the deficiencies in the Appellant's brief.

While the depositions, stipulations and affidavits filed in this case do contain certain minor facts from which at least several inferences are possible, they in no way negate the ultimate fact that Appellant was released by his doctor and returned to his employment where he was able to substantially perform every aspect of his occupation and continued to do so for a period exceeding one year.

Disability under the policy is defined in terms of continuous and total inability to substantially perform the occupation in which the insured previously engaged. The policy is to indemnify the insured from the inability to work not for pain or discomfort, or for loss of earning capacity due to a partial disability. Once having been totally disabled, the return of Appellant to his former employment for a substantial period of time broke the continuity of disability within the meaning of the policy. It is not contended that the service rendered was trivial or negligible in character nor is it contended that Appellant's return to work was an ineffectual effort to perform the duties of his usual employment. The facts irrefutably lead to a contrary conclusion, and the trial court was justified in granting summary judgment.

The Appellant has failed to convince this Court that there was a genuine issue of material fact. Therefore, the judgment of the trial court should be and hereby is affirmed.

Hoffman, C. J., Staton and White, JJ., concur.

NOTE.—Reported in 277 N. E. 2d 29.